# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| Dana D. Jackson, | Case No. 19-CV-2662 (DWF/DTS) |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| Salvation Army, | |
| Defendant. | |

This action comes before the Court on Plaintiff Dana D. Jackson's (1) Complaint, ECF No. 1, and (2) Application to Proceed in District Court Without Prepaying Fees or Costs, ECF No. 2 (IFP Application). For the reasons discussed below, the Court recommends dismissing the Complaint and denying the IFP Application.

## I.   BACKGROUND

Jackson filed the Complaint on October 7, 2019. *See* Compl. 1.[1] The Complaint names two Defendants: the Salvation Army and Adult Shelter Connect (ASC). *See id.* at 1–2. As the Court understands it, both entities work with homeless individuals to provide them, or help them find, shelter.

Jackson's allegations are hard to follow. She asserts that the Salvation Army refuses to "acknowledge" that she has a disability, and that it has "policies and rules that do not [accommodate] with incompassionate advocates, employees and staff." *Id.* at 4.

---

[1] Because the Complaint is not consecutively paginated, references to it use the page numbers provided by the Court's CM/ECF filing system.

She suggests that this violated her rights under the Fourteenth Amendment and the Americans with Disabilities Act (ADA).  *See id.*

Jackson also contends that the Salvation Army and ASC violated her rights under the Fifth Amendment.  *See id.*  This accusation's thrust appears to be that Jackson has a property interest in the "[e]mergency [h]ousing" provided by the Salvation Army and/or ASC, and that staff at one or both of those entities threatened to throw away certain unspecified property of Jackson's.  *See id.*

Jackson also claims that the Salvation Army and ASC violated her Eighth Amendment rights by subjecting her to "cruel" and "unfair" punishment—namely, "forcing [her] to stay out in the cold and rain and heat."  *Id.*  She asserts that some unspecified employees of the Salvation Army and/or ASC "brag[ged]" about forcing people "to stand out in harsher temperatures and snow as a penalty for being homeless."  *Id.*

Jackson alleges that on October 7, 2019, the Salvation Army and/or ASC began to deny her meals even though she had paid $322 in rent.  *Id.*  She states that Defendants violated her Fourth Amendment rights "by creating a policy of taking from the poor."  *Id.* at 5.  She appears to be referring here to rent payments; she states that the Salvation Army's policy is to take this money and "keep[] it by provision of capital for themselves by way of deferring revenue and not recognizing it as a liability over me as a poor person."  *Id.*; *see also id.* at 3 (stating in Complaint's jurisdictional assertions that Jackson "paid in advance for service that was cruelly denied to [her] after paid").  She asserts that Defendants have a "no refund policy" that interferes with her "human rights."  *Id.* at 5.

2

Finally, Jackson claims that Defendants are together acting so as to violate Article 1, Section 10 of the U.S. Constitution by "dehumaniz[ing] [Jackson] as a poor person" and "disallowing [her] and denying [her her] liberties and freedoms." *Id.*

For relief, Jackson asks for $8 million in damages. *See id.* at 6. She claims to want this money "for the purpose of recognizing [Defendants'] policies are corrupt and [to] allow [Jackson her] freedoms to enjoy life without being burdened with such stipulations." *Id.* (This reference to "stipulations" presumably means the rules of the Salvation Army and/or ASC to which Jackson objects.)

Jackson successfully moved to voluntarily dismiss her claims against ASC from this action. *See* Mot. to Dismiss ASC, ECF No. 4; Order for Dismissal Without Prejudice as to Def. ASC, ECF No. 7. As a result, in what follows, the Court focuses on the Complaint's allegations concerning the Salvation Army.

## II.   ANALYSIS

1.   Screening Standards

Jackson did not pay this action's filing fee; she instead filed for in forma pauperis (IFP) status. *See* IFP Appl. In cases in which the plaintiff seeks IFP status, 28 U.S.C. § 1915(e)(2)(B)(ii) specifies that "[n]otwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action . . . fails to state a claim on which relief may be granted."[2]

---

[2] Section 1915(e)(2) speaks in terms of dismissing "the case," but courts routinely use the provision to dismiss parts of cases as well. *See, e.g.*, *Bonczek v. Bd. of Trustees Nat'l Roofing Indus. Pension Plan*, No. 14-CV-3768 (JRT/LIB), 2015 WL 1897837, at *4 (D. Minn. Apr. 23, 2015); *Abduljabbar v. Minn. Dep't of Transp.*, No. 14-CV-3583 (ADM/JSM), 2014 WL 7476513, at *4 (D. Minn. Nov. 5, 2014), *report and recommendation adopted*, 2015 WL 75255 (D. Minn. Jan. 6, 2015).

3

In reviewing whether a complaint states a claim on which relief may be granted, this Court must accept the complaint's factual allegations as true and draw all reasonable inferences in the plaintiff's favor.  *See Aten v. Scottsdale Ins. Co.*, 511 F.3d 818, 820 (8th Cir. 2008).  The complaint's factual allegations need not be detailed, but they must be enough to "raise a right to relief above the speculative level . . . ."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  The complaint must "state a claim to relief that is plausible on its face."  *Id.* at 570.  In assessing a complaint's sufficiency, the court may disregard legal conclusions couched as factual allegations.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  Pro se complaints are to be construed liberally, but must still allege sufficient facts to support the claims advanced.  *See Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004) (citing cases).

2.   Construing the Complaint's Claims

Because the Complaint is hard to follow, the Court will begin by explaining how it construes Jackson's claims.

The Complaint specifically invokes the U.S. Constitution's Fourth, Fifth, Eighth, and Fourteenth Amendments, as well as Section 10 of Article I.  The Constitution does not itself provide rights of action; litigants suing entities for constitutional-rights violations must use some other legal vehicle.  Typically, that vehicle is 42 U.S.C. § 1983, which provides that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

4

As a result, the Court construes Jackson as seeking to bring § 1983 claims against the Salvation Army based on purported violations of the Fourth, Fifth, Eighth, and Fourteenth Amendments, as well as Section 10 of Article I.

The Court also construes Jackson as claiming that the Salvation Army has violated the ADA. Jackson does not specify the ADA provision at issue, but the Court thinks the most applicable provision is 42 U.S.C. § 12182(a), under which "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation."

Finally, the Court construes Jackson as trying to raise a breach-of-contract claim against the Salvation Army, given her allegation that the Salvation Army denied her meals even after she made certain rent payments.

3. Constitutional Claims

The Court will begin by addressing Jackson's constitutional claims. As noted above, the Court construes all of these claims as being brought under 42 U.S.C. § 1983.

To state a claim under § 1983, a plaintiff must plead "that they were deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed under color of state law." *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49–50 (1999); *see also Ivey v. Johnston*, No. 18-CV-1429 (PAM/DTS), 2019 WL 3334346, at *3 (D. Minn. July 24, 2019) (making similar statement (citing *Alexander v. Hedback*, 718 F.3d 762, 765 (8th Cir. 2013))), *report and recommendation adopted*, 2019 WL 3987583 (D. Minn. Aug. 23, 2019). The U.S. Supreme Court has noted that it

5

can be difficult to determine whether a given entity's conduct is "under color of state law." *See, e.g.*, *Brentwood Acad. v. Tennessee Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001). But it is clear that the under-color-of-state-law requirement "excludes from its reach merely private conduct, no matter how discriminatory or wrongful." *Sullivan*, 526 U.S. at 50 (quoting *Blum v. Yaretsky*, 457 U.S. 991, 1002 (1982) (internal quotation marks omitted)).

Whatever confusion there is about the proper test for determining whether given conduct took place "under color of state law," the Court need not worry about that doctrinal point here. This is because Jackson says nothing whatsoever about the Salvation Army's connection to any sort of state or municipal entity. *See generally* Compl. 4–5. In other words, she does nothing to allege that any Salvation Army conduct occurred "under color of state law."[3] As a result, Jackson fails to state a claim for any of her various potential § 1983 causes of action. The Court thus recommends that all of Jackson's § 1983 claims against the Salvation Army be dismissed without prejudice.

---

[3] The Court notes that numerous cases considering the Salvation Army have repeatedly determined that its conduct is not deemed "under color of state law." *See, e.g.*, *Thomas v. The Salvation Army S. Territory*, 841 F.3d 632, 637 (4th Cir. 2016) (deeming Salvation Army "private charity" where plaintiff "ha[d] not alleged any facts that . . . suggest that [its] actions were attributable to the state," and finding that as a result, plaintiff's § 1983 claims against Salvation Army could not proceed); *Brown-Younger v. Salvation Army*, No. 11-CV-01036 (GMN), 2013 WL 1334267, at *4 (D. Nev. Mar. 29, 2013) (finding that Salvation Army "[was] not acting under color of state law" when plaintiff "never alleges any state action or involvement"); *Gordon v. Brown*, No. 12-CV-2440, 2013 WL 870528, at *2 (E.D. La. Mar. 7, 2013) (determining that decision of Salvation Army to evict plaintiff was action "that in no way can be attributed to the State," and observing that "[t]his finding is in accord with other decisions that The Salvation Army is not susceptible to suit under [§ 1983] or for constitutional claims requiring state action" (citing cases)); *Reaves v. Dep't of Veterans Affairs*, No. 08-CV-1624(RJD), 2008 WL 2853255, at *2 (E.D.N.Y. July 22, 2008) (deeming Salvation Army "private organization" and dismissing § 1983 claims against it).

4.     ADA Claim

The Court next turns to Jackson's claim under 42 U.S.C. § 12182(a).  Among the elements a plaintiff must plead to establish a § 12182(a) violation, he or she must show "that the defendants discriminated against [him or her] within the meaning of the ADA." *Hillesheim v. Myron's Cards & Gifts, Inc.*, 897 F.3d 953, 956 (8th Cir. 2018) (quoting *Roberts v. Royal Atl. Corp.*, 542 F.3d 363, 368 (2d Cir. 2008)); *see also Occhino v. Geo. Sherman & Assoc.*, No. 19-CV-2546 (ECT/LIB), 2019 WL 6918394, at *7 (D. Minn. Nov. 15, 2019) (citing cases), *report and recommendation adopted in relevant part*, 2019 WL 6910152 (D. Minn. Dec. 19, 2019); *cf.* 42 U.S.C. § 12182(b) (discussing sorts of applicable discrimination).  This discrimination has to be based on the plaintiff's alleged disability.  *See, e.g.*, *Amir v. St. Louis Univ.*, 184 F.3d 1017, 1027 (8th Cir. 1999); *Occhino*, 2019 WL 6918394, at *7.

In this action, nothing in the Complaint alleges that the Salvation Army did anything (or failed to do anything) because of a disability of Jackson's.  At most, Jackson refers to Salvation Army staff being "incompassionate," but nothing here suggests that they treated Jackson differently as a result of a disability.  The upshot is that the Complaint fails to state a cause of action under § 12182(a).  The Court thus recommends that Jackson's § 12182(a) claim be dismissed without prejudice.

5.     Breach-of-Contract Claim

What remains is Jackson's potential breach-of-contract claim.  Whatever this claim's merits—and the Court has its doubts—it is plainly a state-law claim.  This raises the question of whether this Court has jurisdiction over this claim, given this Court's recommendation that this action's other claims be dismissed.

Under 28 U.S.C. § 1367(a), "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."  Section 1367(c)(3) specifies, however, that a district court "may decline to exercise supplemental jurisdiction over a claim under [§ 1367(a)] if . . . the district court has dismissed all claims over which it has original jurisdiction."

The U.S. Court of Appeals for the Eighth Circuit has discussed these provisions as follows:

> A federal district court has discretionary power to decline the exercise of supplemental jurisdiction where the court has dismissed all claims over which it has original jurisdiction.  The factors a court should consider in determining whether to exercise jurisdiction over pendent state law claims are judicial economy, convenience, fairness, and comity.  *[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine . . . will point toward declining to exercise jurisdiction over the remaining state-law claims.*

*Wilson v. Miller*, 821 F.3d 963, 970–71 (8th Cir. 2016) (emphasis added; citations and internal quotation marks omitted; brackets and ellipses in original).

Here, the emphasized sentence is key.  Under this Court's recommendations above, all of Jackson's federal-law claims have been "eliminated" well before trial.  Furthermore, nothing suggests that this case is "unusual" in any way that would support exercising supplemental jurisdiction over the remaining state-law claim.  As a result, the Court recommends declining to exercise supplemental jurisdiction over Jackson's state-law claim, and so recommends dismissing that claim without prejudice for lack of subject-matter jurisdiction.

8

6.      Conclusion

In conclusion, the Court recommends dismissing the Complaint without prejudice. Given that recommendation, the Court further recommends that the IFP Application be denied.

## RECOMMENDATION

Based on the foregoing, and on all of the files, records, and proceedings herein,

**IT IS HEREBY RECOMMENDED:**

1.      Plaintiff Dana D. Jackson's Complaint, ECF No. 1, be **DISMISSED** without prejudice.

2.      Jackson's Application to Proceed in District Court Without Prepaying Fees or Costs, ECF No. 2, be **DENIED**.

Dated: February 12, 2020              s/David T. Schultz     _
                                      DAVID T. SCHULTZ
                                      United States Magistrate Judge

## NOTICE

**Filing Objections:**  This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation.  A party may respond to those objections within 14 days after being served a copy of the objections.  *See* Local Rule 72.2(b)(2).  All objections and responses must comply with the word or line limits set forth in Local Rule 72.2(c).

9